## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

| | |
|---|---|
| KOREY DUANE RABION, <br> ADC #115045, <br><br> Petitioner, <br><br> v. <br><br> WENDY KELLEY, Director, <br> Arkansas Department of Correction, <br><br> Respondent. | * <br> * <br> * <br> * <br> *   No. 5:18cv00303-JJV <br> * <br> * <br> * <br> * <br> * |

## **MEMORANDUM AND ORDER**

### I.     INTRODUCTION

Petitioner Korey Duane Rabion, an inmate at the Varner Unit of the Arkansas Department of Correction ("ADC"), brings this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus. (Doc. No. 2.) Mr. Rabion was convicted by a jury in Dallas County, Arkansas, of two counts of negligent homicide and one count each of leaving the scene of an accident involving personal injury or death, driving on a suspended license, and driving while intoxicated. (Doc. Nos. 2 at 1, 9-2 at 1-3.) He was sentenced as a habitual offender to ninety-five years' imprisonment. (Doc. Nos. 2 at 1, 9-2 at 4.)

Mr. Rabion filed a direct appeal of the negligent homicide convictions to the Arkansas Court of Appeals, which affirmed. *Rabion v. State*, 2017 Ark. App. 538. In affirming, the Arkansas Court of Appeals recited the evidence in the case as follows:

> On November 1, 2015, Rabion was driving his car on Arkansas Highway 128 between Sparkman and Holly Springs when he swerved over the center line and caused a head-on collision with Edlon Thompson. Ashley Webb was a passenger in Thompson's car. Both Webb and Thompson died of injuries they sustained from the collision.

Allison Ramsey was driving toward Sparkman when she came upon the accident. She stopped to check on the occupants of the vehicles. She went to the first car, determined the driver and passenger were dead, and returned to her car to call 911. Daylight saving time was to end November 1, 2015, and she testified that, "with the time change," it was between 1:00 and 1:20 in the morning. After she made the call, she heard a noise coming from the other car, which was flipped over in the ditch next to the road. A man she later identified as Rabion crawled out of the car, walked over to Ramsey, and asked her "what the fuck happened and where the fuck was he." She told him he'd been in a wreck in between Sparkman and Bearden. She testified that Rabion then "turned and started walking toward Bearden." Ramsey called 911 again to report her encounter with Rabion. Law enforcement arrived shortly thereafter and began to investigate.

Meanwhile, Devonte Smith, Rabion's stepnephew, had just dropped a relative off at home when he saw Rabion walk out of the woods. Smith testified that Rabion was walking as if he was in a lot of pain. Smith let Rabion in his car and Rabion immediately fell asleep, so Smith drove Rabion to Cindy Beck's house. Beck is Smith's mom and Rabion's stepsister. Smith helped Rabion in the house and onto the couch and Rabion fell back asleep.

Beck and Smith both testified that on the afternoon leading up to the wreck, Beck had been having a family get-together at her house. They both testified that they saw Rabion drinking beer that afternoon. From Beck's house, some of the adults had gone on to a nightclub. Beck testified that she saw Rabion there and at some point he had his head down on a table as if he were sleeping. Beck said that she and her friends left the nightclub sometime after Rabion did and started driving home toward Bearden along Highway 128. She came upon the accident after the police had cordoned off both lanes. An officer told her Rabion's identification had been found at the scene, and she turned around to return home on a different route. When Beck arrived home, she said that Rabion was still asleep on her couch. She woke him up and told him about the accident and how the police had found his identification at the scene. Rabion said he did not remember any accident. Beck called the police. Both Smith and Beck testified that they had not seen Rabion drink any time after the accident and before the police arrived.

Officials from the Dallas County Sheriff's Office arrived, placed Rabion under arrest, and transported him to their office. Once there, an officer administered a breath test to measure Rabion's blood-alcohol concentration. The test did not yield a usable sample, so Rabion was then transported to the Dallas County Medical Center for a blood test. At 5:10 a.m., Rabion's blood-alcohol concentration was .117. An accident-reconstruction officer with the Arkansas State Police testified that he investigated the accident and concluded that Rabion's car had crossed the center line and struck Thompson's vehicle head-on.

On January 12, 2016, the State filed a felony information charging Rabion with two counts of negligent homicide, failure to stop after an accident resulting in injury or

2

death, driving with an invalid license, and driving while intoxicated. On May 23, 2016, the State filed an amended information to add a habitual-offender count.

Rabion's jury trial took place on August 8 and August 9, 2016. A jury found him guilty of each offense charged in the amended information and recommended a sentence of forty years' imprisonment and a fine of $10,000 for each count of negligent homicide, and a sentence of fifteen years' imprisonment and a fine of $10,000 for failing to stop after an accident resulting in injury or death.

The jury recommended that he serve the sentences consecutively, which resulted in a total of ninety-five years' imprisonment and fines totaling $30,000. The circuit court ordered that Rabion serve his sentences for driving with an invalid license and driving while intoxicated concurrently with his sentences for his felony convictions. The circuit court entered the sentencing order on August 10, 2016, and Rabion filed a timely notice of appeal on August 31, 2016.

*Rabion v. State*, 2017 Ark. App. 538, at 1-4 (footnote omitted).

Mr. Rabion did not file a petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37 or any other post-conviction petitions or appeals in state court. (Doc. Nos. 2 at 2-4, 9 at 2-3.) He filed the instant Petition for Writ of Habeas Corpus on November 29, 2018. (Doc. No. 2.) He cites three grounds for relief: (1) "prosecutorial misconduct"; (2) "constructive denial of counsel"; and (3) "denial of due process." (Doc. No. 2 at 5-9.) Respondent contends Mr. Rabion's claims are time-barred, procedurally defaulted, and meritless. (Doc. No. 9 at 4-14.) After careful consideration of the Petition, Response, and Reply (Doc. No. 12), I find the Petition should be dismissed with prejudice.

**II.    ANALYSIS**

    **A.    Time Bar**

Respondent argues Mr. Rabion's Petition (Doc. No. 2) is untimely based upon the one-year period of limitation imposed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Title 28 U.S.C. § 2244(d)(1) and (2) impose a one-year period of limitation on petitions for writ of habeas corpus:

3

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

Here, the one-year limitation period began to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). For Mr. Rabion, time began to run on November 6, 2017 – the deadline for filing a petition for rehearing or review of the decision of the Arkansas Court of Appeals.[1] *See* Ark. Sup. Ct. R. 2-3(a) (a petition for rehearing shall be filed within eighteen calendar days from the date of decision); Ark. Sup. Ct. R. 2-4(a) (a petition for review must be filed within eighteen calendar days from the date of decision); Ark. R. App. P. – Crim. 17 (when

---

[1] I note the Arkansas Court of Appeals issued its mandate on November 7, 2017. (Doc. No. 9-6.) However, the United States Supreme Court has held section 2244(d)(1)(A) marks finality as of either the conclusion of direct review or the expiration of the time for seeking such review – not the issuance of the mandate, which might come later. *Gonzalez v. Thaler*, 565 U.S. 134, 150-51 (2012).

a filing deadline under the Rules of the Supreme Court and Court of Appeals falls on a Saturday, Sunday, or legal holiday, the deadline shall be extended to the next business day).  Accordingly, Mr. Rabion's Petition for Writ of Habeas Corpus, filed on November 29, 2018, was filed outside of the one-year limitation period.

The timeliness of Mr. Rabion's Petition depends upon his entitlement to the benefit of the prison mailbox rule.  Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts provides as follows:

> A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing.  If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule.  Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

The inmate bears the burden of proving his entitlement to the prison mailbox rule.  *Grady v. U.S.*, 269 F.3d 913, 916-17 (8th Cir. 2001); *Porchia v. Norris*, 251 F.3d 1196, 1197 (8th Cir. 2001). Mr. Rabion's Petition for Writ of Habeas Corpus includes a declaration stating he placed the Petition in the prison mailing system on November 6, 2018.  (Doc. No. 2 at 13-14.)  Respondent contends Mr. Rabion is not entitled to the benefit of the rule for three independent reasons. Although I consider it a close call, I disagree.

First, Respondent points out Mr. Rabion failed to state in his declaration that he placed the Petition in the prison's system designed for legal mail specifically.  (Doc. No. 9 at 5-6.)  But Rule 3(d) does not require that the declaration so state; it only requires that the legal mail system be used if one exists.  It is not clear that the ADC has a separate system for legal mail, and, if it does, it is not clear that Mr. Rabion failed to use it in this instance.

Second, Respondent points out Mr. Rabion failed to state in his declaration that first-class postage had been prepaid.  (Doc. No. 9 at 6.)  It is true that this requirement has been deemed

5

essential in prior cases. *See, e.g.*, *U.S. v. Chaney*, 641 Fed. Appx. 651, 653 (8th Cir. 2016) (unpublished per curiam) (interpreting identical prison mailbox rule found at Federal Rule of Appellate Procedure 4(c)(1) and finding prisoner was not entitled to the benefit of the rule in part because of the failure to declare that first-class postage had been prepaid); *Clay v. Kelley*, 5:16CV00223-DPM-PSH, 2017 WL 1539784, at 4 (E.D. Ark. Mar. 1, 2017) (report and recommendation) (interpreting Rule 3(d) and finding prisoner was not entitled to the benefit of the rule in part because of the failure to declare that first-class postage had been prepaid); *U.S. v. Chavez*, 2:13CR20009-PKH-MEF, 2015 WL 4775772, at 3 (W.D. Ark. June 26, 2015) (report and recommendation) (interpreting identical prison mailbox rule found at Rule 3(d) of Rules Governing Section 2255 Proceedings and finding prisoner was not entitled to the benefit of the rule because of the failure to declare that first-class postage had been prepaid). As the Court in *Chavez* stated, "[t]he failure to put sufficient first-class postage on the mailing could certainly explain the delay from the date the Motion was purportedly deposited into the prison mail system . . . and the date it was eventually received and filed in the Clerk's office." 2015 WL 4775772, at 3.

But in this case, the record suggests Mr. Rabion did pre-pay first-class postage, despite failing to mention it in his declaration, because the envelope was actually postmarked on November 7, 2018. (Doc. No. 2 at 15.) It appears Mr. Rabion placed the Petition in the prison's internal mailing system on November 6, 2018, and prison officials postmarked it the following day. It is not clear why it did not arrive at its destination until more than three weeks later, but this delay cannot be fairly attributed to Mr. Rabion. Absent some showing by Respondent that Mr. Rabion did not deposit his Petition into the prison's internal mailing system on November 6, 2018, I cannot hold against him the failure to declare that first-class postage had been prepaid.

6

*See May v. Kelley*, 5:18CV00053-BSM-JTR, 2018 WL 7412983, at 3, n.8 (E.D. Ark. Dec. 28, 2018) (report and recommendation) (prisoner afforded benefit of the rule despite failing to declare that first-class postage was prepaid because the petition was received and file-marked three days later, "which is *incontrovertible proof* that [the petitioner] in fact affixed the required postage to the mailing envelope") (emphasis in original).

Third, Respondent points to the postmark date of November 7, 2018, which would have made Mr. Rabion's Petition one day late. (Doc. No. 9 at 7.) But the postmark date is not the relevant date under Rule 3(d). The relevant date is the date the Petition was "deposited in the institution's internal mailing system," which Mr. Rabion has declared was November 6, 2018. (Doc. No. 2 at 14.)

For these reasons, I find Mr. Rabion is entitled to the benefit of the prison mailbox rule. Under that rule, his Petition was timely filed.

    **B.**    **Procedural Default**

Before filing a federal habeas petition, a state inmate must first "fairly present" the substance of his or her federal habeas claims to the appropriate state courts. *Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011) (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)). The fair-presentment requirement exists so that the respective state has the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Murphy*, 652 F.3d at 849 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Picard v. Connor,* 404 U.S. 270, 275 (1971) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) ("We have consistently adhered to this federal policy, for 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'"); *Lenza v. Wyrick*, 665 F.2d 804, 807-08 (8th Cir. 1981). When an inmate fails to

comply with the fair-presentment requirement, his or her claims will be procedurally defaulted. *Murphy*, 652 F.3d at 849.

If it would be futile for a petitioner to return to the state courts to present his or her claim, "the exhaustion requirement in § 2254(b) is satisfied, but th[is] failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default'" or actual innocence. *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).

A careful review of Mr. Rabion's Petition reveals all of his claims are procedurally defaulted. He acknowledges he did not raise any of his current claims on direct appeal (Doc. No. 2 at 5, 7, 8); in fact, the only claim raised on direct appeal was a purely state law question of the sufficiency of the evidence. *Rabion v. State*, 2017 Ark. App. 538. Mr. Rabion also acknowledges he did not file a Rule 37 petition or any other post-conviction application. (Doc. No. 2 at 3, 5, 7, 8.)

When a state prisoner has defaulted his federal claims in state court, federal habeas review of the claims is barred unless the prisoner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law"; or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice," that is, a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Mr. Rabion raises two contentions meant to excuse his procedural default under the cause-and-prejudice exception.

First, he states he did not raise his current claims on direct appeal because his attorneys were "incompetent" and "abandon[ed]" him. (Doc. No. 2 at 5, 7, 8.) Ineffective assistance of

8

counsel that prevents a petitioner from raising a claim in state court may be considered "cause" for a procedural default. *Smith v. Lockhart*, 882 F.2d 331, 333 (8th Cir. 1989). "However, under the principle of comity, such an ineffective assistance claim generally must be presented in a state court as an independent claim before it may be used in a federal habeas court to establish 'cause' for a state procedural default." *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 489 (1986)). Moreover, under *Martinez v. Ryan*, 566 U.S. 1, 9 (2012), "[i]nadequate assistance of counsel *at initial-review collateral proceedings* may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." (Emphasis added.) The language of *Martinez* strongly implies, if not compels, that there must have actually been a collateral post-conviction proceeding in order for the exception to apply. *Martinez* and its progeny discuss a defective collateral-review process; they do not discuss a non-existent one – a collateral review that did not happen because the convicted person simply failed to file it in a timely fashion. *See Jones v. Pa. Bd. of Prob. & Parole*, 492 Fed. Appx. 242, 246-47 (3d Cir. 2012) ("Because the Court spoke only of applying its exception to an 'initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel[,]' we conclude that the *Martinez* analysis is inapplicable where the criminal defendant did not initiate any state collateral review proceeding whatsoever."). Because Mr. Rabion did not raise an independent claim of ineffective assistance of counsel in state court and did not initiate any state collateral review proceeding whatsoever, his claim of ineffective assistance at this stage cannot excuse his procedural default.

Second, Mr. Rabion states he did not file a Rule 37 petition because of the failure of the state court Clerk to provide him a "signed or certified mandate" following direct appeal, which he avers is required by Arkansas law. (Doc. No. 2 at 6-7.) But he has not pointed to any provision of Arkansas law that would have required a signed and certified mandate be provided to him; Rule

5-3(a) of the Rules of the Arkansas Supreme Court and the Arkansas Court of Appeals requires only that the Clerk mail the mandate to "the clerk of the circuit court from which the appeal was taken." In his Reply, Mr. Rabion cites Arkansas Rule of Criminal Procedure 37.1(c), which requires that a Rule 37 petition be accompanied by an affidavit that "the facts stated in the petition are true, correct, and complete to the best of petitioner's knowledge and belief." (Doc. No. 12 at 2.) He suggests he would have committed perjury had he attested his Rule 37 petition was correct and complete without having a copy of the signed and certified mandate. (*Id*. at 3.) This argument is not well taken. Furthermore, as Respondent points out, Mr. Rabion could have filed a Rule 37 petition even before the mandate was issued. Under Rule 37.2(c)(ii), "[i]f a petition is filed after a conviction is affirmed by the appellate court but before the mandate is issued, the petition shall be treated as filed on the day after the mandate is issued." In short, there was no need for Mr. Rabion to await the mandate.

For these reasons, I find Mr. Rabion has failed to show that "some objective factor external to the defense impeded" his efforts to fairly present his claims in state court. *Coleman*, 501 U.S. at 753. His claims are procedurally defaulted, and he has not demonstrated a reason to excuse the default. Accordingly, his Petition for Writ of Habeas Corpus should be dismissed.

    **C.**    **Merits**

Even if Mr. Rabion's claims were reviewable, they fail on the merits. In Ground One, which he labels as "prosecutorial misconduct," he says only that the insurance company's investigation "showed a different reconstruction of the accident than State Police" and no medical professional testified to the victims' cause and manner of death. (Doc. No. 2 at 5.) Neither allegation relates to the prosecutor's conduct, and neither raises a constitutional issue or one of federal law. *See* 28 U.S.C. § 2254(a) (a habeas petition shall be entertained "only on the ground

that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States").

In Ground Two, which Mr. Rabion labels as "constructive denial of counsel," he contends his trial counsel was "in some form of domestic turmoil" with his wife and co-counsel. (Doc. No. 2 at 6.) As a result, counsel could not agree as to whether Mr. Rabion should testify and "just let the trial end without ever defending or presenting a defense." (*Id*.) Mr. Rabion does not specify what evidence should have been presented on his behalf or what his testimony would have been had he taken the stand. Similarly vague allegations of ineffective assistance of counsel have been held insufficient to show that counsel's assistance fell below an objective standard of reasonableness and that the petitioner suffered actual prejudice as a result of counsel's deficiencies. *See, e.g.*, *Pollard v. Armontrout*, 16 F.3d 295, 297-98 (8th Cir. 1994) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

In Ground Three, which Mr. Rabion labels as "denial of due process," he states he was deprived of medical attention. He says hospital staff failed to retain a blood sample, police failed to follow protocol in taking his blood, and he was not "physically and professionally treated" for his injuries while at the hospital. (Doc. No. 2 at 8.) Simply put, these claims have nothing to do with his continued custody and are not cognizable in federal habeas.

### III.    CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." In cases where the petitioner's claims are procedurally barred, a district court must consider the following factors when determining whether it should issue a certificate of appealability: "1) if the claim is clearly procedurally defaulted, the certificate

should not be issued; 2) even if the procedural default is not clear, if there is no merit to the substantive constitutional claims, the certificate should not be issued; but, 3) if the procedural default is not clear and the substantive constitutional claims are debatable among jurists of reason, the certificate should be granted." *Khaimov v. Crist*, 297 F.3d 783, 786 (8th Cir. 2002) (citing *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000)); *see also Langley v. Norris*, 465 F.3d 861, 863 (8th Cir. 2006).

In this case, Mr. Rabion's claims are clearly procedurally defaulted due to his failure to raise them on direct appeal and collateral review in state court. He has failed to demonstrate cause to excuse his procedural default. And *Martinez* is unhelpful to him because he failed to file a Rule 37 petition and has not asserted a legally significant reason for failing to do so. In addition, there is no merit to Mr. Rabion's substantive constitutional claims. For these reasons, no certificate of appealability will be issued.

## IV.   CONCLUSION

IT IS, THEREFORE, ORDERED that:

1. Mr. Rabion's § 2254 Petition for Writ of Habeas Corpus (Doc. No. 2) is DISMISSED with prejudice.

2. A certificate of appealability will not be issued.

SO ORDERED this 2nd day of April 2019.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE